1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RAEKUBIAN BARROW, | ) | No. C 10-1521 JSW (PR) |
| Petitioner, | ) | |
| | ) | **ORDER DENYING PETITION FOR** |
| vs. | ) | **WRIT OF HABEAS CORPUS AND** |
| | ) | **CERTIFICATE OF APPEALABILITY** |
| SWARTHOUT, Warden, | ) | |
| Respondent. | ) | |
| | ) | |
| _____ | ) | |

## INTRODUCTION

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered Respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. For the reasons set out below, the petition is denied.

## PROCEDURAL BACKGROUND

In 2008, a jury in Marin County Superior Court convicted Petitioner of making a criminal threat in violation of California Penal Code Section 422. (Ex. 2 at 315.)[1] He received a sentence that was enhanced to seven years, eight months in state prison due to prior convictions. (*Id.* at 386.) His conviction and sentence were affirmed by the California Court of Appeal and the California Supreme Court denied his petition for review. (Ex. 9.) His state habeas petition was denied. (Ex. 11.)

_____

[1]Citations to "Ex." are to the record lodged with the Court by the Attorney General.

1

**FACTUAL BACKGROUND**

2          The California Court of Appeal summarized the facts underlying the charged

3  offense as follows:

4          Veronica Hicks-Gladney, a 63-year-old nurse, lived in Vallejo but worked in
           Tiburon, California.  She decided to move closer to her place of work and, in
5          October 2007, she sublet a room in appellant's two-bedroom apartment in Novato.
           Gladney agreed to pay half of the rent and utilities.  She often slept on the couch in
6          the living room–instead of in her bedroom–because appellant snored and "kept the
           TV up as loud as it would go[.]"
7
           A few weeks after she moved in, Gladney suspected that appellant had been going
8          through her possessions and eating her food when she was not home.  When
           Gladney spoke to appellant about her suspicions, they "got into a violent
9          argument[.]"  During the argument, Gladney told appellant she was going to move
           out and "he got very upset[.]"  He retrieved a butcher's knife from the kitchen.  He
10         stood "very close" to Gladney, made "stabbing motions in the air," and threatened
           to kill her and her family.  Frightened, Gladney backed away from appellant and
11         locked herself in her bedroom.

12         Gladney did not tell her family members what had happened because she did not
           want to upset her elderly mother, nor did she want her family members to get
13         involved.  The next day, appellant apologized.  He told Gladney he "was wrong,"
           that "it would never happen again," and that he would not harm her or her family.
14         Gladney remained afraid of the appellant, but she accepted his apology.  Things
           with appellant "settled down" but Gladney avoided staying at appellant's
15         apartment unless she was working in Tiburon.

16         In mid-November 2007, Gladney again suspected appellant was eating her food
           and going through her possessions.  She decided her living situation was "not
17         going to work," so she boxed up her possessions and left them by her bedroom
           door.  When appellant saw the boxes, he and Gladney got into a "really heated"
18         argument.  Appellant cursed at Gladney, said "violent things" to her, and
           threatened her.  As before, appellant picked up a knife and threatened to kill
19         Gladney and her family.  "Really afraid," Gladney went into her bedroom and
           locked the door.
20
           Appellant and Gladney got into another argument in December 2007 after Gladney
21         noticed appellant had been going through her possessions.  Gladney had also
           discovered she was paying a larger share of rent than appellant and had decided
22         she did not like that appellant was "always drinking."  She told appellant she was
           not going to pay rent for December and that she was "definitely moving."  In
23         response, appellant grabbed Gladney's wrist.  He told her he would kill her and her
           "whole f-ing family."  Appellant eventually released Gladney's wrist, and she
24         walked away.  A few days later, Gladney returned from work and noticed her room
           was "really, really torn apart."  She spoke to a police officer, who visited the
25         apartment and later arrested appellant.  Gladney moved out of the apartment.

26

27  *People v. Barrow*, No. A121546, slip op. at 2-3 (Cal. Ct. App. Aug. 31, 2009) (attached

28                                                2

as Ex. 7).

## **STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ.  *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable

in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

## DISCUSSION

As grounds for habeas relief, Petitioner asserts that: (1) inflammatory and improper comments made by two prospective jurors during voir dire tainted the jury in violation of Petitioner's Sixth Amendment right to an impartial jury; and (2) the trial court erroneously admitted prejudicial evidence in violation of Petitioner's right to due process.

## I.   Jury Bias

Petitioner claims that improper comments made by two prospective jurors during voir dire tainted the jury in violation of his Sixth Amendment right to a fair trial by a panel of impartial jurors. *See Irvin v. Dowd*, 366 U.S. 717, 722 (1961).

The California Court of Appeals summarized the background to the jury bias claim as follows:

> During defense counsel's voir dire, prospective juror Sam F. referred to appellant as a "rather tough customer." Sam F., however, indicated he would be able to follow the court's instructions and presume appellant was innocent. The prosecutor used a peremptory challenge to excuse Sam F. A second prospective juror, Ivan S., initially expressed concern about his ability to be fair and impartial because, as he explained, "I'm not sure I would want to meet the Defendant in a dark alley. [Defendant is] [s]cary looking to me." Ivan S., however, agreed that it was "not right" to be prejudiced against a person based on that person's physical appearance. Ivan S. also stated he would "try and be fair and open minded in spite of appearances" and that he would base his decision in the case on "all the evidence." Finally, Ivan S. agreed he would not convict appellant if the People had not met their burden of proof. Ivan S. was removed for cause.
>
> After the jury was selected, the court asked counsel whether the voir dire proceedings were "acceptable." In response, defense counsel stated, "Yes. The only thing that I man, um, think about is that one comment about Mr. Barrow

being scary. I'm not saying anything about it right now but I would like to think about it and talk about that with some of my colleagues." The court and defense counsel engaged in the following colloquy:

"THE COURT: About [Sam F.]'s statement that he wouldn't want to run into [appellant] in a dark alley and that he's scary looking.

"[DEFENSE COUNSEL]: Yeah.

"THE COURT: That he therefore may not be able to be fair.

"[DEFENSE COUNSEL]: Yes, I think that is a possibility that he tainted the pool but I'd like to think about that a little bit and talk about that with some colleagues –

"THE COURT: Okay.

"[DEFENSE COUNSEL]: – before I let that go. I'd like to reserve this.

"THE COURT: Okay. Let me know if you want to bring that up. I tend to think that ... Mr. Barrow's appearance is what it is and that ... the comment by the juror didn't have any negative effect on any of the jurors or would not have, but I'm happy to explore that further with you and I'm happy to admonish the jury if you think such is necessary to cure any concerns that you have."

(Ex. 7 at 3-4.) Defense counsel did not raise the issue of the two prospective jurors' comments again.

The Sixth Amendment guarantees to the criminally accused a fair trial by a panel of impartial jurors. U.S. Const. amend. VI; *see Irvin v. Dowd*, 366 U.S. 717, 722 (1961). "Even if only one juror is unduly biased or prejudiced, the defendant is denied his constitutional right to an impartial jury." *Tinsley v. Borg*, 895 F.2d 520, 523-24 (9th Cir. 1990) (internal quotations omitted). However, the Constitution "does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). The Ninth Circuit has recognized that to disqualify a juror for cause requires a showing of actual bias or implied bias, that is "bias in fact, or bias conclusively presumed as a matter of law." *United States v. Gonzalez*, 214 F.3d 1109, 1111-12 (9th Cir. 2000).

Petitioner fails to show actual bias here. The comments made by the two prospective jurors may show their own bias against Petitioner, but they did not ultimately

serve on the actual jury.  The comments do not establish an actual bias on the part of anyone else, including anyone who became a juror.

Petitioner argues that the comments created an implied bias.  He cites *Mach v. Stewart*, 137 F.3d 630, 633 (9th Cir. 1997), in which the court presumed that at least one juror was biased by highly inflammatory and prejudicial statements made during voir dire by a prospective juror who did not ultimately serve on the jury.  *Id.*  The petitioner in *Mach* was charged with sexual conduct with a minor and one of the prospective jurors questioned during voir dire was a social worker with the state's child protective services.  *Id.* at 631-32.  In the course of voir dire, the juror revealed that she had experience in child psychology, and stated four times that she had never seen a case where a child lied about sexual abuse.  *Id.* at 632-33.  Although she was struck for cause, the court described the statements she made as "expert-like" and "[g]iven the nature of [her] statements, the certainty with which they were delivered, the years of experience that led to them and the number of times that they were repeated," the court presumed that "at least one juror was tainted and entered into jury deliberations with the conviction that children simply never lie about being sexually abused" in violation of the petitioner's right to an impartial jury. *Id.*

The California Court of Appeal found *Mach* factually distinguishable.  (Ex. 7 at 7.) The state appellate court reasoned that unlike the prospective juror in *Mach* who made four separate statements stating why her experience would cause her to be biased, the prospective jurors here made only brief comments about Petitioner's appearance.  (*Id.*) The prospective jurors also stated they could be impartial, while the juror in *Mach* stated she could not.  (*Id.*)  Lastly, the appellate court reasoned that the jurors' comments here, unlike those in *Mach*, did not relate to the issues in the case.  (*Id.*)

The state appellate court decision is reasonable.  While the statements made by the prospective jurors here may show the two jurors' personal bias, the comments merely

related to Petitioner's appearance.  Unlike the "expert-like" statements made by the juror in *Mach*, the comments here about Petitioner's appearance do not imply any expertise. They only convey a subjective opinion based on observations available to all jurors, who could each decide for themselves whether Petitioner seemed threatening.  The comments here were also not made with the same certainty and repetition as the statements in *Mach*. Additionally, the prospective jurors' conversation with the court after they made their comments reminded the rest of the venire that jurors may only look to the evidence presented to reach a fair and unbiased conclusion.  Under these circumstances, the appellate court was correct in not presuming any juror to be biased as a result of the two prospective jurors' comments.

The California Court of Appeal's denial of Petitioner's claim was not contrary to, or an unreasonable application of, clearly-established Supreme Court authority. Petitioner is not entitled to federal habeas relief on this claim.[2]

## II.   **Prejudicial Evidence**

Petitioner claims that the trial court improperly admitted prejudicial evidence in violation of his right to due process.  The trial court denied Petitioner's motion to exclude the testimony of his former roommate, Corativo.  The appellate court summarized the relevant facts as follows:

> At trial, Corativo testified she rented a bedroom in appellant's apartment in February 2007.  In approximately May 2007, Corativo told appellant she was moving out.  He became upset and seemed "personally offended" Corativo was planning to move.  He "started yelling" and suggested Corativo was "doing something wrong by moving out."  A few weeks later, Corativo and appellant got into another argument about whether appellant would clean the toilet in their shared bathroom.  When Corativo asked appellant to clean the toilet, he "exploded" and "started arguing" with her.  Then he hit her in the face with a closed fist.  Corativo ran into her room and called 911.  Corativo moved out in June 2007 because she "did not feel safe" at the apartment.  The police came to the apartment but they did not arrest appellant, nor did they file criminal charges against him.

---

[2]This Court need not reach Respondent's alternative argument that the claim is procedurally defaulted.

7

After both sides rested, the court instructed the jury on the Corativo altercation. The court advised the jury: "In evaluating this evidence, consider the similarity or lack of similarity between the uncharged act and the charged offenses. [¶] Do not consider this evidence for any other purpose except for the limited purpose of the Defendant's intent. [¶] Do not conclude from this evidence ... that the Defendant has a bad character or is disposed to commit crime. [¶] If you conclude that the Defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the Defendant is guilty..."

(Ex. 7 at 8-9.)

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999). The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995). But only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process. *See Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991). Evidence often raises both permissible and impermissible inferences, but it is up to the jury to sort them out with help from the court's instructions. *Id.*

The state appellate court reasoned that because prosecution needed to prove that Petitioner intended for Gladney to take his actions as a threat, the evidence was relevant in showing that the acts were not accidental or inadvertent. (Ex. 7 at 10-11.) The court thus concluded that Corativo's testimony regarding the alleged, albeit uncharged, battery had high probative value. (*Id.* at 11.)

The state appellate court's reasoning is sound. The prosecution had to prove that Petitioner intended that Gladney would view Petitioner's actions as a threat. Petitioner's prior threatening behavior in a similar situation–namely a conflict with a female roommate–tends to show such an intent. If the jurors found Corativo's testimony credible, they could make the permissible inference that Petitioner would know that his actions could be viewed by Gladney as a threat.

8

In addition, the trial court gave limiting instructions to the jury in order to prevent the jury from misusing Corativo's testimony.  Juries are presumed to follow a court's limiting instructions with respect to the purposes for which evidence is admitted.  *Aguilar v. Alexander*, 125 F.3d 815, 820 (9th Cir. 1997).  The court specifically instructed the jury not to consider this evidence in determining Petitioner's character, or disposition for committing crimes, but instead only in determining whether Petitioner satisfied the requisite intent as required by the statute in order to be convicted.  Not only does precedent compel this Court to presume that the jury followed the trial court's limiting instructions, but the fact that Petitioner was acquitted of another charge tends to show that the jury indeed followed the court's instructions.

The California Court of Appeal's finding on this claim is neither contrary to, nor an unreasonable application of, clearly-established Supreme Court authority.  Petitioner's petition for habeas relief is therefore denied on this claim.

## CONCLUSION

After a careful review of the record and pertinent law, the petition for writ of habeas corpus is DENIED.

A certificate of appealability will not issue.  *See* 28 U.S.C. § 2253(c).  This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED:  June 27, 2012

_____
JEFFREY S. WHITE
United States District Judge

9

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

RAEKUBIAN A. BARROW,                           Case Number: CV10-01521 JSW

                Plaintiff,              **CERTIFICATE OF SERVICE**

  v.

SWARTHOUT et al,

                Defendant.
_____/

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on June 27, 2012, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Raekubian A. Barrow G16543
San Quentin State Prison
San Quentin, CA 94974

Dated: June 27, 2012

*Jennifer Ottolini*

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk